UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| MARQUIS THOMPSON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 21-cv-2171-JES ) |
| OFFICER SHEYDE PERRY, *et. al.*, | ) ) |
| Defendants. | ) |

## ORDER AND OPINION

This matter is now before the Court on Defendants' Motion for Summary Judgment. Doc. 43 (the "Motion"). Plaintiff filed a Response (Doc. 46), and Defendants filed a Reply. Doc. 47. For the following reasons, the Motion is GRANTED in its entirety.

### Background

On July 6, 2021, Plaintiff Marquis Thompson, *pro se*, filed a Complaint under 42 U.S.C. § 1983 alleging that the Macon County Jail violated his constitutional rights by failing to protect him from an inmate assault on November 2, 2020. Doc. 1. The Complaint was denied for failure to state a claim. Doc. 8. After a series of amended complaints and merit review orders, the Court ultimately permitted Mr. Thompson's failure-to-protect claim to proceed against Macon County Officers Sheyde Perry, Terry Collins, and Danielle Merrifield. *See* Text Order Dated August 26, 2022. The Motion and related briefing followed.

### Material Facts

At all times relevant to the suit, Mr. Thompson was a pretrial detainee at the Macon County Jail, and Officers Perry, Collins, and Merrifield were employed at the jail. Doc. 43-1 at 1 (Mr. Thompson's Response to Requests for Admission); 43-2 at 1 (Perry Affidavit); 43-3 at (Collins

1

Affidavit) at 1; 43-4 (Text Order Dated June 16, 2022); Doc. 46 at 11-12 (Thompson Affidavit) at 11.

On October 29, 2020, Mr. Thompson witnessed a fellow inmate, Matthew Anderson, stealing from another inmate, Chase Brown. Doc. 43-1 at 2. Mr. Thompson informed Mr. Brown of this theft and cautioned him to be more mindful of his property. *Id.* Brown reported Mr. Anderson's theft to jail staff, who placed Mr. Anderson in segregation as a result. *Id.* Mr. Anderson made violent threats to Mr. Thompson in retaliation, as he reportedly knew it was Mr. Thompson who told Mr. Brown about the theft. *Id.* at 3.

The next day, on October 30, 2020, Mr. Anderson was placed in a nearby housing unit. *Id.* A few days later, on the morning of November 2, 2020, at around 10:00 am Mr. Thompson was making a phone call. *Id.* While making the call, Mr. Anderson physically attacked Mr. Thompson *Id.*

The parties agree to the facts stated above. *See* Doc. 43; Doc. 46. And, the parties appear to agree that the doors between Mr. Thompson and Mr. Anderson's separate housing units, *i.e.*, Pods A and B, respectively, were left open which allowed le Mr. Anderson to access Mr. Anderson's unit to attack him. *See* Doc. 43; Doc. 46. However, the parties dispute the reasons that the doors were left open.

On the one hand, Defendants maintain that a diabetic inmate required immediate medical treatment, officers were sent to check on him, and the doors were left open to ensure the safety of the officers. Doc. 47 at 1-2. To the contrary, Mr. Thompson disputes the existence of a medical emergency and states that the officers were merely checking to see if cells were locked. Doc. 46 at 3-5. Apart from affidavit evidence, the record on this factual discrepancy consists of a two-page

2

incident report. *See* Doc. 47-1 at 1-2. The report, as excerpted below, does not support either Parties' account of the circumstances of the attack.

The first page of the report includes a narrative written by Officer Perry, *id.* at 1:

> **Narrative:** On 11-2-20 I C/O S.Perry was assigned to Trod 2. At approximately 1025 hours I had C/O Collins in 2-B checking a open door upstairs in B pod and C/O Merrifield standing by in the officers area. As I was alternating doors to get a diabetic out of A pod inmate Anderson, Matthew ran through the vestibule and attacked Thompson, Marquis in A Pod. I called out a 10-10 in Trod 2. C/O Collins and C/O Haddock entered A pod and broke up the fight and took both inmates to deadlock pending disciplinary.
>
> Due to having an officer in B pod and a officer on stand by in the officers area the second inner door was overridden to allow the officer standing by to take inmate Ballard over to medical to get his diabetic insulin check. Inmate Thompson was moved back in to A Pod because his actions were deemed self-defense

The second page of the report contains a description of the events by Officer Jordan, not a party, based on his review of video footage, *id.* at 2:

> On 11/02/2020, I (Cpl. Jordan #4793) was assigned to escort on 1st Shift. At approximately 1023, a fight was called out for Trod 2. The fight occurred in Trod 2 A Pod. The fight was between Inmate Matthew Anderson and Inmate Marquis Thompson.
>
> After reviewing the video the following was observed. C.O. Terry Collins was let in to Trod 2 B Pod to check for inmates possibly locked in their cell. The outer vestibule door to A and B Pod were left unsecure along with the inner vestibule door leading to B Pod open. This was done because an officer entered the Pod alone. C.O. Merrifield arrived in the Trod to pick up diabetic inmates for medical. A diabetic inmate was located in Trod 2 A Pod and B Pod. Because of the presents of additional officers, C.O. Perry temporarily unsecured A Pods Inner vestibule door to allow the diabetic to exit his Pod to be taken to medical. The inner vestibule door was open for less than 15 seconds. While Both A and B Pods inner vestibule doors were open, Inmate Matthew Anderson enters A Pod from B Pod. Inmate Anderson seeks out Inmate Marquis Thompson. Inmate Anderson starts by going up the stairs and then Inmate Anderson locates Inmate Thompson on the phone. Inmate Anderson swings at Inmate Thompson. Inmate Thompson gets up from his seated position and tries to create space between Inmate Anderson and himself. Inmate Anderson continues to pursue Inmate Thompson. Punches were exchanged between the both inmates. Inmate Thompson made a couple attempts to wrap Inmate Anderson up to avoid the altercation. Because Inmate Anderson was the primary aggressor in this altercation and Inmate Thompson attempted to avoid the situation, Inmate Thompson was placed back in population without disciplinary.
>
> Neither Inmate wished to press charges. Inmate Anderson received superficial scratches from the fight. Inmate Thompson stated that he was uninjured but sore from the altercation but did not require medical treatment.

The incident report is unclear, and at times inconsistent between the first and second pages, so the Court is unable to coherently reproduce its contents. For example, the report is inconsistent as to how many diabetic inmates required treatment, as well as Officer Collins' purpose for being in Trod 2 B pod.[1] Additionally, Officer Perry's narrative does not include information indicating that certain doors were left open so as to enable an officer to safely exit. Nevertheless, for the reasons discussed below, the Court may resolve the Motion despite the disputed facts surrounding the attack. Significantly, Mr. Thompson has failed to contest Defendants' statement of fact (Doc. 43 at 3), supported, in part, by affidavit evidence, representing that Defendants were unaware that Mr. Anderson had threatened him.

**Motion for Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant if entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). When presented with a motion for summary judgment, the Court must construe the record "in the light most favorable to the nonmovant and avoid[] the temptation to decide which party's version of the facts is more likely true." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323-24. Once a properly supported motion for summary judgment is filed, the burden shifts to the non-moving party to demonstrate with specific evidence that a triable issue of fact remains for trial. *Gracia v. Volvo Europa Truck, N.V.*, 112 F.3d 291, 294 (7th Cir.

---

[1] The briefing is unclear as to the layout of the relevant prison units. And, the Parties do not define the term "Trod."

4

1997). The party opposing summary judgment "must present definite, competent evidence in rebuttal." *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004).

Of special relevance here, a district court must "construe the facts in the light most favorable to [the non-movant], and [when applicable] do so liberally in light of [the non-movant's] pro se status…." *Smallwood v. Williams*, 59 F.4th 306, 318 (7th Cir. 2023) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 811 (7th Cir. 2017)).

However, the non-movant cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories, or admissions that establish that there is a genuine triable issue; he "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Finally, a scintilla of evidence in support of the non-movant's position is not sufficient to oppose successfully a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

**Discussion**

Mr. Thompson alleges that the Defendants are liable under § 1983 for violating his constitutional rights by failing to protect him from Mr. Anderson's attack. Doc. 24 at 5-7.

"To begin, a § 1983 plaintiff must always show that he was deprived of a federal right." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021) (citation and quotation omitted); *see also Marvin v. Holcomb*, 72 F.4th 828, 833 (7th Cir. 2023) ("[W]ithout an underlying constitutional or statutory violation, there can be no § 1983 liability."). Furthermore, "to succeed in a § 1983 suit, a plaintiff must 'establish not only that a state actor violated his constitutional rights, but also that the violation caused the plaintiff injury or damages.'" *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1032 (7th Cir. 2019) (quoting *Roe v. Elyea*, 631 F.3d 843, 864 (7th

Cir. 2011)); *see also Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020) ("[Plaintiff's] claim fails on the basic proposition that he has sued for damages under § 1983 and alleged a constitutional tort [] without then developing evidence of a recoverable injury.") (citing *Wilson v. Garcia*, 471 U.S. 261, 278 (1985)); *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982) ("Section 1983 is a tort [and] [a] tort to be actionable requires injury.").

Because Mr. Thompson was a pretrial detainee, his rights arose under the Fourteenth Amendment. *See Miranda v. Cty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018). Detainees "have a clearly established right to be free from physical harm inflicted by others in the institution." *Kemp v. Fulton Cnty.*, 27 F.4th 491, 494 (7th Cir. 2022) (citing *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). Thus, to establish a Fourteenth Amendment violation, Mr. Thompson must show: "(1) the defendant made an intentional decision regarding the conditions of the plaintiff's confinement; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate the risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved, making the consequences of the defendant's inaction obvious; and (4) the defendant, by not taking such measures, caused the plaintiff's injuries." *Thomas v. Dart*, 39 F.4th 835, 841 (7th Cir. 2022) (citations omitted). Significantly, "[t]his standard does not reach negligent conduct; rather, the plaintiff must show the defendants acted with purposeful, knowing, or reckless disregard of the consequences of their actions." *Vogelsberg v. Kim*, No. 20-2926, 2022 WL 1154767, at *2 (7th Cir. Apr. 19, 2022) (quotation and citation omitted). Additionally, even "[a] showing of… gross negligence will not suffice." *McCann v. Ogle Cnty., Illinois*, 909 F.3d 881, 886 (7th Cir. 2018) (citation omitted).

Here, Defendants' argument for summary judgment primarily relies on the third element, that is, whether their conduct was unreasonable. Doc. 43 at 5-7. Defendants depend on their

statement of fact and assert that "the doors were left open because officers were attending to another inmate suffering a medical emergency" and therefore it was reasonable to leave the cell doors open "to allow an attending officer to escape the pod if inmates grew unruly." *Id.* at 6 (citations omitted). However, as discussed *supra*, there is a dispute of material fact as to whether there was a medical emergency. Nevertheless, even if the facts detailed in the record concerned only routine treatment of inmates, a jury viewing the record in favor of Mr. Thompson as the non-movant would still be unable to find Defendants liable, because the conduct described constitutes, negligence at most, and not objectively unreasonable behavior. This is largely due to Defendants' lack of knowledge or notice concerning the possibility of the attack at issue.

Indeed, "[t]o prevail on [a failure-to-protect] claim, [Mr. Thompson] must show, among other things, that a reasonable officer… would have recognized that [Mr. Anderson] posed a substantial risk of harm." *Silva v. Read*, No. 21-3029, 2022 WL 4103622, at *2 (7th Cir. Sept. 8, 2022) (citation omitted). This standard requires a showing that Defendants had "knowledge or notice" that Mr. Thompson was at risk of being attacked by Mr. Anderson. *Young v. Dart*, SCS-17-1914, 2021 WL 3633927, at *11 (N.D. Ill. Aug 17, 2021); *see also Jones v. Williams*, SCS-18-3686, 2021 WL 3408508, at *13 (N.D. Ill. Aug. 4, 2021) (noting in a failure-to-protect case arising under the Fourteenth Amendment that "[w]hat the defendant knew has a bearing on whether the defendant acted reasonably.").[2]

At bottom, there is no evidence in the record that shows Defendants were aware of Mr. Anderson's threats towards Mr. Thompson, or that they should have otherwise known of the risk of attack. Defendants' statement of fact clearly indicates that all three Defendants were unaware

---

[2] Curiously, Defendants appear to cite an out-of-circuit Eighth Amendment case, *Prosser v. Ross*, 70 F.3d 1005, 1006 (8th Cir. 1995), for this maxim. *See* Doc. 43 at 6-7.

7

that Mr. Anderson verbally threatened Mr. Thompson. Doc. 43 at 3. Mr. Thompson does not dispute this, merely asserting without further explanation, that Defendants' actions were unreasonable. *See* Doc. 46 at 5. And, as far as the Court can discern, the sole support for Mr. Thompson's claim that officers were aware of the threats is found within the Second Amended Complaint. *See* Doc. 24 at 5-7. However, those allegations do not specify that any particular officer overheard such threats. *See, e.g.*, *id.* at 5 ("While Mr. Anderson was standing out of my cell threating [sic] me two officers came in and told Mr. Anderson to pack his things."). And, Mr. Thompson "can no longer depend on the allegations in [his] complaint." *Blanton v. RoundPoint Mortgage Servicing Corp.*, 825 F. App'x. 369, 372 n.1 (7th Cir. 2020).

Moreover, "[j]ails are dangerous places" and "'[c]orrectional officials cannot be held liable under the Civil Rights Act for a sudden, unexpected attack.'" *Robinson v. Sincinski*, SCS-23-7229, 2023 WL 8661645, at *3 (N.D. Ill. Dec. 8, 2023) (quoting *Washington v. Bryant*, JHL-11-8184, 2012 WL 589031, at *2 (N.D. Ill. Feb. 16, 2012)). Thus, without relevant record evidence, Defendants cannot be held liable under § 1983 for the surprise attacks by Mr. Anderson, as "[d]etention facilities, after all, are dangerous places often full of people who have demonstrated aggression." *Akindele v. Arce*, GF-15-3081, 2017 WL 698679, at *4 (N.D. Ill. Feb. 22, 2017) (citation omitted).

Furthermore, Mr. Thompson cannot escape this outcome through a cursory and conclusory assertion that Defendants violated his constitutional rights by "callously ignoring multiple sections" of 20 Ill. Adm. Code 701. Doc. 46 at 6. As Defendants note in Reply, they were unable to properly respond to Mr. Thompson's assertion as he did not identify the particular provisions in the Code that the Defendants violated. *See* Doc. 47 at 3. And, "'42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws….'" *Hunter v. Mueske*, 73 F.4th 561,

567 n.1 (7th Cir. 2023) (alterations omitted) (quoting *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003)).[3]

In light of the foregoing, Defendants' Motion is GRANTED. *Cf. Shaffer v. Randall*, MSS-15-5770, 2017 WL 1739913, at *3 (N.D. Ill. May 4, 2017) (granting motion for summary judgment to officer defendant in a Fourteenth Amendment failure-to-protect case, in part, because the record did not indicate that the officer knew an attacker posed risk to the plaintiff and therefore the officer could not "have recklessly refrained from taking appropriate steps to protect" the plaintiff).

The Court has determined that Defendants Terry Collins, Danielle Merrifield, and Sheyde Perry did not unconstitutionally fail to protect Mr. Thompson from Mr. Anderson's attack, and that their actions were objectively reasonable when considered in the totality of the circumstances. As a result, the Court need not address whether either is entitled to qualified immunity. *See Van den Bosch v. Raemisch*, 658 F.3d 778, 787 n.9 (7th Cir. 2011); *see, e.g.*, *Howard v. Braemer*, PP-20-1366, 2023 WL 5804387, at *8 (E.D. Wis. Sept. 7, 2023); *Fleming v. Champaign Cnty., Illinois*, JBM-19-2070, 2021 WL 6201383, at *7 (C.D. Ill. Nov. 23, 2021).

## Conclusion

For the reasons set forth above, Defendants' Motion for Summary Judgment (Doc. 43) is GRANTED in its entirety. The District Clerk is directed to CLOSE the case.

Entered on this 16th day of January 2024.

s/ *James E. Shadid*
UNITED STATES DISTRICT JUDGE

---

[3] Again, Defendants cite to an out-of-circuit case to argue for the application of a legal principle that has been discussed by the Seventh Circuit. *See* Doc. 47 at 3 (citing *United States v. Suing*, 712 F.3d 1209, 1213 (8th Cir. 2013)). And, Defendants do not inform the Court that these cases are out-of-circuit. This is concerning as the case citation does not include a reference to the circuit of origin. *See, e.g., id.* (citing *Suing*, as "U.S. v. Suing, 712 F.3d 1209, 1213 (2013)").